UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER HARTLEY,<br><br>           Plaintiff,<br><br>      v.<br><br>ON MY OWN, INC., et al.,<br><br>           Defendants. | No.  2:17-cv-00353-KJM-EFB<br><br>ORDER |

Plaintiff Amber Hartley requests the court approve the settlement between the parties, as required by California's Private Attorneys General Act (PAGA), Labor Code § 2698, *et seq*. For the reasons below, the court GRANTS the request for settlement approval.

I.      BACKGROUND

   A.      Procedural Background

On February 17, 2017, plaintiff Amber Hartley and former plaintiff Janice Taylor[1] filed a complaint against their employers, defendants On My Own, Inc., On My Own Community

/////

/////

---

[1] Former plaintiff Janice Taylor's claims were dismissed on June 21, 2019 for failure to prosecute.  ECF No. 44.

1

1    Services, and On My Own Independent Living Services, for violations of the California Labor

2    Code.[2]  *See* Compl., ECF No. 1.  Specifically, they alleged defendants:

> (1) fail[ed] to provide their non-exempt employees, including but not limited to in home service providers it calls direct service trainers ("DSTs") for all hours worked, including overtime compensation; (2) fail[ed] "to authorize, permit, provide, and/or make available to those employees, including those who work as DSTs, the meal and rest periods to which they are entitled by law and failing to pay premium wages for these missed breaks; (3) fail[ed] to pay those employees for required travel between clients; (4) regularly fail[ed] to reimburse those employees as promised for mileage incurred on the job; (5) fail[ed] to provide those employees with accurate, itemized wage statements; and (6) fail[ed] to pay all wages after such employees voluntarily or involuntarily terminated their employment with Defendants.

10   *Id.* ¶ 1.  On February 17, 2017, plaintiff submitted to defendants and the California Labor

11   Workforce and Development Agency ("LWDA") a notice of her intent to seek penalties under

12   PAGA as required by the statute and filed her initial complaint in this court.  Mot., ECF No. 48-1

13   (citing Hicks Decl. ¶ 4, ECF No. 48-2; Compl.).  Plaintiff filed her Amended Complaint adding a

14   claim for PAGA Penalties on April 25, 2017.  *Id.* (citing Am. Compl, ECF No. 8).  Defendants

15   filed a motion to compel arbitration on July 17, 2017, ECF No. 20, which the court granted, and

16   as a result dismissed all non-PAGA claims and compelled all of plaintiff's individual claims to

17   arbitration.  ECF No. 29.

18           The parties continued to litigate the PAGA collective action claim and exchanged

19   discovery.  Mot. at 6.  After submitting mediation briefs, on January 27, 2020, the parties

20   attended a full-day mediation session with Michael J. Loeb of JAMS, a mediator specializing in

21   wage and hour class actions and PAGA mediations.  Hicks Decl. ¶ 12.  The parties ultimately

22   reached a settlement, which they finalized March 23, 2020, subject to this court's approval.

23   *Id.* ¶ 14.  On March 24, 2020, plaintiff filed the instant motion to approve the parties' PAGA

24   settlement.  Mot.  Defendants filed a statement of non-opposition.  ECF No. 49.  The court took

25   the matter under submission and resolves it here.

26   /////

---

[2] Former Defendant On My Own Inc. is unrelated to the other defendants and the court dismissed it from the case without prejudice on May 23, 2017.  ECF No. 15.

1           B.      Relevant Settlement Provisions

2           The settlement provides for a PAGA payment of $575,000, inclusive of costs and attorneys' fees incurred and subject to an escalator provision,[3] to resolve the PAGA Settlement Group members' claims of Labor Code violations based on the allegations in the operative complaint.  Mot. at 7 (citing Hicks Decl., Ex. 1 ("Settlement"), §§ 2, 9).  Of this amount, one-third, or $191,666.67, would be paid in attorneys' fees, $6,802.87 would be paid in costs to plaintiff's counsel, and $7,550 would be paid to a third-party settlement administrator.  *Id.* (citing Settlement §§ 2(a–g), 6).  The named plaintiff would receive an incentive award of $10,000.  *Id.*  Seventy-five percent of the remaining $358,980.86 would be distributed to the LWDA, and 25 percent, or $89,745.22, would be distributed to the PAGA Settlement Group Members.  *Id.* (citing Settlement § 2(c)).  The PAGA Settlement Group consists of 1,467 current and former non-exempt "Elder Care Service Providers," "Senior Direct Service Trainers," "Direct Service Trainers," "Senior Direct Service Providers," and/or "Direct Service Providers," who worked in California for defendants during the period of February 17, 2016 through the date of this order (the "PAGA Period").  Mot. at 8 (citing Settlement § 6(a), 9).  The settlement bases payments to the Settlement Group members on each employee's share of the workweeks that the Settlement Group members collectively worked during the applicable time period.  Settlement § 6(b).  The Settlement Administer will tender to the LWDA as *cy pres* beneficiary any checks it sends to PAGA Settlement Group members, who do not cash them within 180 days from the date of mailing.  Mot. at 10; Settlement § 6(h).

            In exchange for the settlement payments, plaintiff, on behalf of herself and the LWDA, will release the PAGA claims and all remedies available under the PAGA based on the facts alleged in the complaint for activity during the PAGA Period.  Mot. at 9 (citing Hicks Decl. ¶ 17); Settlement § 3(a).  Aside from plaintiff's individual wage and hour claims that this court

---

[3] The Settlement Agreement contains an escalator clause which states that, if the total number of PAGA Settlement Group members exceeds 1,467 by more than 15 percent as of March 27, 2020, 60 days after the parties executed the memorandum of understanding underlying the Settlement Agreement, then the total settlement amount will increase by a proportionate amount.  Mot. at 10 n.7; Settlement § 9.

compelled to arbitration, the Settlement Agreement does not release any individual non-PAGA claims by any member of the PAGA Settlement Group. *See* Mot. at 9; Proposed Order, ECF No. 48-5, at 4.

II.     DISCUSSION

"An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, . . . who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). Thus, "[a]n action brought under the PAGA is a type of qui tam action." *Id.* at 429. Because a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, the PAGA provides that "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]." Cal. Lab. Code § 2699(l)(2).

A party seeking approval of a PAGA settlement must simultaneously submit the proposed settlement to the LWDA to allow the LWDA to comment on the settlement if it so desires. PAGA also states that courts may exercise their discretion to lower the amount of civil penalties awarded "if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2). Because state law enforcement agencies are the "real parties in interest" for PAGA claims, the court's task in reviewing the settlement is to ensure the state's interest in enforcing the law is upheld. *Sakkab*, 803 F.3d at 435. Plaintiff's counsel has transmitted a copy of the instant motion and supporting declarations as well as a copy of the Settlement Agreement to the LWDA, through the LWDA's online submission page, as required by California Labor Code section 2699. Hicks Decl. ¶ 16, ECF No. 48-2. LWDA has not submitted anything to the court reflecting a position on this settlement.

Other than the provisions discussed above, PAGA does not establish a standard for evaluating PAGA settlements. Indeed, the LWDA has stated it "is not aware of any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action." *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017) (quoting from the

LWDA response in *O'Connor v. Uber Technologies Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016)).

At least one court in this circuit has applied the factors set out in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), to evaluate a PAGA settlement. *See O'Connor*, 201 F. Supp. 3d 1110 at 1134. The *Hanlon* factors, designed for use in evaluating class action settlements, include (1) the strength of a plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the expertise and views of counsel; (7) the presence of government participation; and (8) the reaction of class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026. Many of these factors are not unique to class action lawsuits and bear on whether a settlement involving more than one plaintiff is fair and has been reached through an adequate adversarial process. Thus, the court finds these factors useful in evaluating a PAGA settlement. However, the court finds three of the *Hanlon* factors—risk of maintaining class action status, presence of a governmental participant, and reaction of class members—irrelevant to a PAGA settlement that is not a class action and in which the LWDA, as here, opts not to weigh in.

For the above reasons, the court evaluates the PAGA settlement in light of the PAGA requirement that the award not be "unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2). The court also considers the five relevant *Hanlon* factors and discusses whether "the settlement provisions are at least as effective as the protections or remedies provided by state and federal law or regulation for the alleged violation." Cal. Lab. Code § 2699.3(b)(4).

    A.    <u>"Unjust, Arbitrary and Oppressive, or Confiscatory" as to Defendant</u>

This factor favors approval of the proposed settlement. The settlement requires defendant to pay $575,000, resulting in a net settlement of $358,980.86 after costs, to settle the PAGA claims of a group of 1,467 current and former employees, including plaintiff. The court finds no indication here that the settlement would be "unjust, arbitrary and oppressive, or

confiscatory" with respect to defendant. *See* Cal. Lab. Code § 2699(e)(2); *cf. Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016) (finding $1 million settlement amount for PAGA claims was reasonable). Defendant's statement of non-opposition is consistent with this conclusion. *See* ECF No. 49.

B. Strength of Plaintiff's Case

As plaintiff points out, in order to recover any PAGA penalties, plaintiff "would be required to prove at trial each of the underlying Labor Code violations" and prove that each non-exempt employee was not properly compensated. Mot. 10–11 (citing *Cardenas v. McLane Foodservice, Inc.*, No. SACV 10-473 DOC FFMX, 2011 WL 379413, at *3 (C.D. Cal. Jan. 31, 2011) ("Given the statutory language [of PAGA], a plaintiff cannot recover on behalf of individuals whom the plaintiff has not proven suffered a violation of the Labor Code by the defendant.")); *see also Basiliali v. Allegiant* Air, LLC, No. 218CV03888RGKMRW, 2019 WL 8107885, at *3 (C.D. Cal. July 1, 2019).

Furthermore, plaintiff would have to overcome the hurdle of persuading the court the case is manageable, despite some evidence from defendant that individualized proof would be necessary if the case were to proceed. In particular, plaintiff points to "conflicting issues in the data, whether some work performed by [PAGA Settlement Group members] was exempt from overtime due to being performed as part of federal government programs, and fifty declarations obtained by Defendants," all of which create uncertainty as to whether the court might strike plaintiff's PAGA collective action as too unwieldy. Mot. at 11–12.

Courts have noted that legal uncertainty favors approval of a settlement. *See, e.g., Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval."). Given the large number of PAGA Settlement Group members, the court finds this factor favors settlement.

C. Risk, Expense, Complexity and Likely Duration of Further Litigation

For similar reasons, the need to demonstrate all 1,467 aggrieved employees' entitlement to a PAGA award "threatens a risky, expensive, and complex trial that would extend

6

the duration of the lawsuit." *Patel v. Nike Retail Servs., Inc.*, No. 14-CV-04781-RS, 2019 WL 2029061, at *3 (N.D. Cal. May 8, 2019). The settlement provides a timely, certain and meaningful recovery, while the outcome at trial and any subsequent appeal is not certain, and in any event would substantially delay recovery. This factor favors also approval.

### D. Amount of Settlement

This factor, too, favors approval. Plaintiff's counsel represents he has "calculated that the maximum potential PAGA penalties assuming the Court would 'stack' penalties for similar and derivative violations" and concluded the maximum penalty would be roughly $10,342,865.00. Mot. at 10 (citing Hicks Dec. ¶ 10). However, plaintiff points out that the recent case of *ZB, N.A. v. Superior Court,* 8 Cal.5th 175, 197–98 (2019), precludes any recovery of unpaid wages under California Labor Code section 558 that were previously available under prior caselaw.[4] Mot. at 12 (citing Hicks Dec. ¶¶ 15, 18; Walter Decl. ¶ 12). Taken together, the legal uncertainties associated with the case support a settlement for less than the maximum penalty.

Here, 25 percent of the gross settlement, $89,745.22, will be divided among roughly 1,467 employees, at an estimated average award of $61.18 per PAGA Settlement Group member. Hicks Decl. ¶ 18. Moreover, only the aggrieved employees' PAGA claims are being released. The settlement does not release any non-PAGA individual claims of the aggrieved employees, other than those of plaintiff Hartley. *See Patel*, 2019 WL 2029061, at *3. This is in line with several other court-approved PAGA settlements. *See, e.g., id.* at *1 (approving settlement award amounting to an average of roughly $30 per aggrieved employee); *Basiliali*, 2019 WL 8107885, at *4 (approving settlement where average payment per employee was $387). The court finds the amount of the settlement allocated to the PAGA Collective members is not unreasonable.

/////

/////

---

[4] The court does not make a finding as to the effect of this decision, but merely notes plaintiff's position and credits the apparent uncertainty introduced as a result.

7

1.      Attorneys' Fees and Costs

As for the attorneys' fees and costs, "PAGA provides for reasonable awards but does not provide a specific standard for evaluating attorneys' fees in a settlement of PAGA claims." *Patel*, 2019 WL 2029061, at *4 (citing Cal. Lab. Code § 2699(g)(1)). Part of the court's role in determining whether a PAGA settlement is reasonable involves determining whether the amount of attorneys' fees is proper. *Perez v. All Ag, Inc.*, No. 118CV00927 DAD EPB, 2020 WL 1904825, at *8 (E.D. Cal. Apr. 17, 2020) ("[T]he district court must assume a fiduciary role and act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is." (internal quotation marks and citation omitted)). Courts in the Ninth Circuit generally "award attorneys' fees under a fee-shifting statute using either the lodestar method or the percentage-of-the-fund method." *Id.* (citing, inter alia, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Rincon v. W. Coast Tomato Growers, LLC*, No. 13-CV-2473-JLS (KSC), 2018 WL 828104, at *5 (S.D. Cal. Feb. 12, 2018) (approving attorneys' fees in PAGA case using both lodestar and percentage methods)). For the percentage-of-the-fund approach, the Ninth Circuit has set a 25 percent benchmark as presumptively reasonable. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). "Special circumstances that could justify varying the benchmark award include when counsel achieves exceptional results for the class, undertakes extremely risky litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis." *Perez*, 2020 WL 1904825, at *8 (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015)). "An explanation, however, is necessary when the court departs from the 25 percent benchmark." *Id.*

The proposed attorneys' fees, $**191,666.67**,[5] comprise 33 percent of the Gross Settlement Amount, and so exceed the Ninth Circuit benchmark of 25 percent. As for the lodestar cross-check, plaintiff's counsel estimate they have collectively spent roughly 245 hours litigating this case for over three years and calculate a lodestar fee of **$133,599.79**, based on

---

[5] The settlement also provides that the attorneys' fees would be increased "in the event the escalator clause in the Settlement Agreement is triggered." Hicks Decl. ¶ 19.

1   hourly rates of $250 to $725.  Hicks Decl. ¶ 26.  Thus, the requested fee award is **1.45** times the
2   lodestar.

3           The rates proposed by counsel for calculating the lodestar are higher than what is
4   normally awarded in this district.  The court in *Aviles v. Subaru of Am., Inc.*, No.
5   118CV01544DADSKO, 2020 WL 868842, at *6 (E.D. Cal. Feb. 21, 2020), for example, awarded
6   in a lemon law case an average of $650 per hour for an attorney with roughly 35 years of
7   experience; $500 to $350 for 15 to 20 years' experience; $325 to $275 for roughly 8 years of
8   experience; $250 to $225 for roughly 4 years of experience; and $150 for a legal assistant.  Other
9   cases in this district have awarded much lower rates.  *In re Taco Bell Wage & Hour Actions*,
10  222 F. Supp. 3d 813, 839 (E.D. Cal. 2016) (concluding, in PAGA case, that appropriate rates in
11  this community are $350 to $400 per hour for attorneys with twenty or more years' experience,
12  $250 to $350 per hour for attorneys with less than fifteen years' experience, and $125 to $200 per
13  hour for attorneys with less than two years' experience); *Sanchez v. Frito-Lay, Inc.,* No. 1:14-cv-
14  00797 AWI, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), *report and recommendation*
15  *adopted*, No. 1:14-cv-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (awarding
16  rates in wage-and-hour case of $275 to $350 for attorneys with between fourteen and twenty
17  years of experience); *see also Durham v. FCA US LLC*, No. 2:17-CV-00596-JLT, 2020
18  WL 243115, at *1 (E.D. Cal. Jan. 16, 2020) ("[T]he Sacramento Division and Fresno Division
19  award comparable rates.").

20          Mr. Haines has over 40 years of experience, and is requesting $675 per hour,
21  Mr. Hoyer has 31 years of experience, and is requesting $725 per hour, and Mr. Hicks has 12
22  years of experience, and is requesting $525 per hour.  Hicks Decl. ¶ 20.  The other associates on
23  the case have between 4 and 8 years of experience and are requesting roughly $300 per hour.  *Id.*
24  In order to be in line with other attorneys' fees awards in this district, range of rates from $650 to
25  $250 would be more appropriate given the experience of the attorneys.

26          In light of this case law and of counsel's experience, for the purpose of the lodestar
27  calculation, the court reduces Mr. Haines and  Mr. Hoyer's rates to $650 per hour, and Mr. Hicks'
28  rate to $350.  Using the chart provided by counsel depicting the hours recorded by each attorney,

9

1    Hicks Decl. ¶ 26, the court re-calculates the lodestar with these rates to be **$104,476.49.** *See In*

2    *re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 4126533, at *7 (N.D. Cal. Aug.

3    3, 2016), *dismissed sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017

4    WL 3468376 (9th Cir. Mar. 2, 2017) ("[T]rial courts need not, and indeed should not, become

5    green-eyeshade accountants . . . Rather, the Court seeks to do rough justice, not to achieve

6    auditing perfection." (internal quotation marks and citations omitted).

7          Plaintiff's request of **$191,666.67** would require the application of a **1.83** lodestar

8    multiplier.  Plaintiff's counsel argues a multiplier is warranted in this case, as well as an increase

9    from the 25 percent benchmark, because counsel represented plaintiff on a contingency basis and

10   undertook significant risk, including having to turn away less-risky cases, in taking on this case.

11   Hicks Decl. ¶¶ 27–28.  The court finds a multiplier of **1.5** is reasonable in light of this risk to

12   plaintiff's counsel, compounded by the three-year duration of this litigation and the favorable

13   result plaintiff's counsel achieved.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166,

14   1176 (S.D. Cal. 2007) (approving award of 33 percent of fund and 1.47 lodestar multiplier

15   primarily on basis of the duration of the litigation, risk assumed by counsel, and favorable

16   recovery of 12 percent of maximum provable damages); *see also Rodriguez v. M.J. Bros., Inc.*,

17   No. 118CV00252LJOSAB, 2019 WL 3943856, at *16 (E.D. Cal. Aug. 21, 2019) (finding 25

18   percent of fund and multiplier of 1.124 reasonable, in part because of risk of contingency case);

19   *Brulee v. DAL Glob. Servs., LLC*, No. CV 17-6433 JVS(JCGX), 2018 WL 6616659, at *11

20   (C.D. Cal. Dec. 13, 2018) (approving 1.68 or 1.72 multiplier, depending on which hourly rate

21   used).  Accordingly, the attorneys' fees amount shall be $**156,714.735**.  The residual amount from

22   the gross settlement fund "shall be included in the Net Settlement Sum" as dictated by the

23   settlement.  Settlement § 2(d).

24         The request for $6,802.87 in costs appears appropriate, based on counsel's

25   breakdown of the costs provided in his declaration, which show the bulk of that cost was for the

26   JAMS mediation that facilitated this settlement.  *See* Hicks Decl. ¶ 19.

27   /////

28   /////

        2.        <u>Other Costs</u>

The amount the parties' settlement allocates to the settlement administrator, Simpluris, $7,550, does not appear excessive for this number of PAGA Collective members. *See* Hicks Decl., Ex. 3 (Simpluris estimate); *Patel*, 2019 WL 2029061, at *4 (finding $5,261 for Simpluris not excessive where PAGA collective consisted of 40 employees).

The settlement also accounts for a $10,000 incentive award for named plaintiff Hartley. Counsel explains this award is justified due to the risk of adverse employment consequences and financial risks borne by plaintiff as a result of her involvement in this litigation. Hatley Decl. ¶ 30, ECF No. 48-4 (describing risk of reputational harm in the community and with respect to future employment opportunities as a result of public exposure in this class action as well as financial risk of possibly having to pay defendant's costs). Plaintiff also submits a declaration describing her efforts on this case, which totaled roughly 60 hours. *Id.* ¶¶ 15–25. In light of her risk and the hours spent aiding in this litigation, the court finds a $10,000 incentive award is reasonable. *Brulee*, 2018 WL 6616659, at *7 (awarding $10,000 incentive award to plaintiff who spent approximately 60 to 70 hours on the case).

Therefore, this factor favors approving the settlement.

     E.        <u>Extent of Discovery Completed and Stage of Proceedings</u>

"As to the factors pertaining to the extent of discovery completed and the stage of proceedings, '[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.'" *Van Lith v. iHeartMedia + Ent't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 4340337, at *12 (E.D. Cal. Sept. 29, 2017) (citation omitted). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.)).

This factor weighs slightly in favor of approval. The case, as it pertains to plaintiff's PAGA claims, is still somewhat in the early stages, but plaintiff began seeking issuing relevant discovery after the court granted defendant's motion to compel on August 1, 2018.

Further, plaintiff's counsel attests that, "[t]hrough the discovery propounded by both parties to date, Class Counsel had conducted sufficient investigation and discovery to properly assess going into the mediation the risks of continuing to litigate the case through trial and any subsequent appeals." Hicks Decl. ¶ 11.

### F. Experience and Views of Counsel

This factor also favors approval. The parties here are represented by competent and experienced counsel who favor settlement. Counsel for plaintiff include Ryan L. Hicks, a partner with Hoyer & Hicks, and Walter L. Haines, the senior attorney at United Employees Law Group, PC, who are both experienced employment attorneys and have handled, between them, hundreds of wage and hour cases. Hicks Decl. ¶¶ 1–3; Haines Decl. ¶¶ 1–2, ECF No. 48-3. Plaintiff's counsel views this settlement as "fair, adequate and reasonable," and avers it "provides substantial monetary benefits to Settlement Class Members," is "well-within the range of reasonableness and Class Members have supported the settlement," Haines Decl. ¶ 12; *see also* Hicks Decl. ¶ 15. Additionally, as noted, defendant and its counsel do not oppose. ECF No. 49 at 2.

### G. Totality of the Circumstances

Each of the six relevant factors discussed above favors final approval. The parties reached settlement on the PAGA claims only after "arms-length settlement negotiations aided by an expert mediator, and thorough investigation of the underlying facts." Haines Decl. ¶ 12. Furthermore, the fact that this is a non-reversionary settlement, and any uncashed checks will be disbursed to the LWDA as a *cy pres* beneficiary, rather than returned to defendant also counsels in favor of the court's approving the settlement. *Thio v. Genji*, LLC, 14 F. Supp. 3d 1324, 1331 (N.D. Cal. 2014) (preliminarily approving settlement including PAGA claims which identified LWDA as *cy pres* beneficiary). For these reasons, and those discussed above, the court finds the proposed settlement is fair and reasonable and promotes the settlement provisions are "at least as effective as the protections or remedies provided by state and federal law or regulation for the alleged violation." Cal. Lab. Code § 2699.3(b)(4). Therefore, the court GRANTS the parties' joint request for settlement approval.

III. <u>CONCLUSION</u>

Based on the foregoing, the court GRANTS Plaintiff's Motion to Approve PAGA Settlement. A status conference on implementation of the settlement is set for **February 26, 2021** at 10:00 a.m. in Courtroom 3. At least fourteen days before the hearing, a representative of the settlement administrator shall submit a declaration setting forth the date the settlement checks were mailed, the number and value of any undeliverable and/or uncashed checks, and a confirmation that the unpaid amounts have been disbursed to the LWDA as provided in the Settlement Agreement.

The action is dismissed with prejudice. The parties shall bear their own costs. Other than setting the status conference as provided above, the court in its discretion declines to retain jurisdiction over enforcement of the settlement under California Civil Procedure Code section 664.6.

This order resolves ECF No. 48.

IT IS SO ORDERED.

DATED: August 25, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE